In re Gustave Edwin STEINACHER and Joan Elizabeth Steinacher, Debtors.

Gustave Edwin Steinacher and Joan Elizabeth Steinacher, Appellants,

v.

Elizabeth F. Rojas, Chapter 13 Trustee, Appellee.

BAP No. CC–02–1147–MoPB.
Bankruptcy No. ND–01–14056–RR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 25, 2002.

Filed Sept. 13, 2002.

Janet A. Lawson, Oxnard, CA, for Gustave and Joan Steinacher.

Before: MONTALI, PERRIS and BRANDT, Bankruptcy Judges.

## *OPINION*

MONTALI, Bankruptcy Judge.

### I.  INTRODUCTION

A local rule of the bankruptcy court requires Chapter 13 debtors who had any bankruptcy cases pending within six months of filing their Chapter 13 petitions to tender to the Chapter 13 trustee, within fifteen days of their petition dates, the

lesser amount of (1) mortgage payments that became due (but were not paid) during the pendency of the prior case or (2) mortgage payments that became due in the six months prior to the filing of the Chapter 13 case.  In the present case, debtors filed their Chapter 13 petition while their Chapter 7 case was still pending.  They did not tender to their Chapter 13 trustee the unpaid mortgage payments that had become due in the two months prior to their Chapter 13 petition date. The Chapter 13 trustee therefore moved for dismissal, and the bankruptcy court dismissed the debtors' Chapter 13 case for their failure to comply with the local rule. The debtors filed a timely appeal.  We REVERSE, and in doing so we reach the necessary conclusion that the local rule in question conflicts with the Bankruptcy Code and is thus invalid.

### II.  GOVERNING RULE

In this appeal, we address the validity of a portion of Local Bankruptcy Rule 3015–1(m)(2) of the United States Bankruptcy Court for the Central District of California ("L.B.R.3015–1(m)(2)").    L.B.R.    3015–1(m)(2) requires certain Chapter 13 debtors to cure certain pre-petition defaults within fifteen days of filing their petitions and outside their Chapter 13 plans:

> *Postpetition Mortgage Payments.*  All mortgage payments that accrue postpetition before the § 341(a)[1] meeting of creditors must be tendered, in the form described in section (m), to the chapter 13 trustee or the trustee's representative at the § 341(a) meeting of creditors. *However, if the debtor or the debtor's spouse has filed any bankruptcy case(s) that was/were pending within 6 months before the date the current case was*

---

**1.**  The local rule is referring to 11 U.S.C. § 341.  Unless otherwise indicated, all section and rule references are to the Bankrupt-cy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

*filed, the postpetition mortgage payments referred to herein shall also include the fewer of: (1) all such payments coming due after the previous case(s) was/were filed, or (2) all such payments coming due during the 6 months prior to filing of the current case (the "6 Month Rule"). Payments required pursuant to the "6 Month Rule" must be received by the chapter 13 trustee not later than 15 days after the date of filing of the petition commencing the pending case. The requirements stated herein will apply unless otherwise ordered by the court.*[2] In determining whether a postpetition mortgage payment has come due, the court does not consider payments as to which a late penalty has not yet accrued or which are due on the date of the confirmation hearing.

The mortgage holder may accept payments without prejudice to pending foreclosure proceedings.

L.B.R. 3015–1(m)(2) (emphasis added).

### III. FACTS

Appellants Gustave Edwin Steinacher and Joan Elizabeth Steinacher ("Debtors")

filed a Chapter 7 case on May 29, 2001 and received a discharge in that case on October 12, 2001. On December 26, 2001, while their Chapter 7 case was still pending, Debtors filed a Chapter 13 petition.[3] On January 24, 2002, appellee Chapter 13 trustee Elizabeth F. Rojas ("Trustee")[4] held a meeting of creditors pursuant to section 341. In accordance with an unchallenged portion of L.B.R. 3015–1(m)(2), Debtors tendered to Trustee the mortgage payment that had become due since the Chapter 13 petition date. *See* L.B.R. 3015–1(m)(2).

Debtors did not tender the unpaid prepetition mortgage payments that had become due in November and December 2001, as required by the Six Month Rule. Nor did Debtors request, prior to the deadline for the tender, that the Six Month Rule be waived for them, despite the provision allowing the court to excuse compliance.[5]

Trustee did not examine Debtors at the section 341 meeting, but instead set the matter for hearing on the court's regular Chapter 13 calendar on February 8, 2002. Trustee orally requested dismissal for failure to comply with the Six Month Rule[6]

---

**2.** We hereinafter refer to these provisions of L.B.R. 3015–1(m)(2) as the "Six Month Rule."

**3.** As of the date of the oral argument in this appeal, Debtors' Chapter 7 case had not been closed.

**4.** Although Trustee invoked the pertinent local rule to seek dismissal, she has not filed a brief in this appeal. This leaves us in the awkward position of having to test the validity of the local rule without any party appearing to defend it. We remain perplexed why the United States Trustee, on behalf of all Chapter 13 trustees in the Central District of California, has remained silent. Perhaps enforcement of the rule is a burden that Chapter 13 trustees would prefer to avoid.

**5.** Because Debtors failed to file a motion requesting that they be excused from complying

with the Six Month Rule, they arguably waived their right to complain about its enforcement. No one, however, has appeared to make this waiver argument. Moreover, at the hearing before the bankruptcy court, Debtors' counsel did argue that Debtors should not be required to follow the Six Month Rule and thus should not be punished for noncompliance. As such, Debtors have preserved this argument for appeal.

**6.** Surprisingly, Trustee did not file a written motion to dismiss, but Debtors have not questioned that practice on appeal. We note that section 1307(c) permits dismissal on "request" and after "notice and a hearing." A motion to dismiss filed by a creditor or trustee is a contested matter under Rule 9014; that rule sets forth the procedure for serving such a notice, something that generally should not be done orally.

and filed a written objection to confirmation of Debtors' plan, citing non-compliance with the Six Month Rule.

Debtors filed a written opposition to Trustee's request for dismissal. Debtors argued that the Six Month Rule impermissibly conflicted with the Bankruptcy Code by imposing an additional requirement for Chapter 13 eligibility, that the rule was impermissibly broad, and that imposition of the rule was unjust in this particular case.

At the hearing before the bankruptcy court, Debtors' counsel argued that the Six Month Rule improperly interfered with Debtors' substantive right under the Bankruptcy Code to cure any default in their plan. Without considering whether factors existed to excuse compliance, the bankruptcy court observed that Debtors had violated the rule and entered an order dismissing the case on February 19, 2002 ("Dismissal Order").[7]

On February 26, 2002, Debtors filed a motion for reconsideration of the Dismissal Order (the "Motion for Reconsideration") and a request for a hearing date on the Motion for Reconsideration. In the Motion for Reconsideration, Debtors again argued that the Six Month Rule improperly added an eligibility requirement not found in section 109 of the Bankruptcy Code. They developed further their argument that the rule conflicts with Bankruptcy Code provisions (i.e., section 1322) which permit Chapter 13 debtors to cure defaults through their plans. Debtors' counsel submitted a proposed order setting a hearing on the Motion for Reconsideration, which the bankruptcy court marked as "denied" on March 3, 2002. The bankruptcy clerk noted on the docket sheet (in Docket Entry No. 43) that the Motion for Reconsideration was "Disposed—Denied [EOD 03/04/02]."

On February 26, 2002, Debtors also filed a motion for stay pending appeal ("Motion for Stay") and a request for hearing date on the Motion for Stay. Debtors' counsel submitted a proposed order setting a hearing on the Motion for Stay, which the bankruptcy court marked as "denied" on March 3, 2002. The bankruptcy clerk noted on the docket sheet (in Docket Entry No. 44) that the Motion for Stay was "Disposed—Denied [EOD 03/04/02]."

On March 8, 2002, Debtors filed their notice of appeal of the Dismissal Order and the denial of the Motion for Reconsideration and the Motion for Stay. Debtors then filed an emergency motion for stay pending appeal with this panel, which was denied on April 3, 2002.

## IV. ISSUE

Did the bankruptcy court err in dismissing Debtors' Chapter 13 case for failure to comply with the Six Month Rule?

## V. STANDARD OF REVIEW

The validity of a court rule is a question of law which we review *de novo*. *Jones v. Hill (In re Hill)*, 811 F.2d 484,

---

7. Ordinarily, Debtors would have been able to re-file their Chapter 13 case on or about August 19, 2002 (six months after the Dismissal Order was entered) without having to comply with the Six Month Rule. Under such circumstances, this appeal would have been moot because we would not have been able to give Debtors effective relief. *Garcia v. Lawn,* 805 F.2d 1400, 1402 (9th Cir.1986) (the "test of mootness of an appeal is whether the appel-

late court can give the appellant any effective relief in the event it decides the matter on the merits in his favor"). Here, however, Debtors' Chapter 7 case is still pending, and the Six Month Rule will apply until six months after the dismissal or closure of their Chapter 7 case. Therefore, because reversal could provide Debtors with effective relief from the local rule, the appeal is not moot. *Id.*

485–86 (9th Cir.1987). A trial court's application of a local rule is reviewed for an abuse of discretion. *In re Crayton*, 192 B.R. 970 (9th Cir. BAP 1996).

## VI. DISCUSSION

### A. *Standards for Determining Validity of Local Rules*

■■■ Congress, in adopting the Bankruptcy Code, delegated to the Supreme Court the authority to make procedural rules. *See* 28 U.S.C. §§ 2071 (allowing promulgation of local rules) [8] and 2075 (allowing Supreme Court to prescribe general bankruptcy rules).[9] *See American Law Center PC v. Stanley (In re Jastrem)*, 253 F.3d 438, 441–42 (9th Cir.2001) ("We have interpreted [28 U.S.C.] § 2075 to mean that 'any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code.' "). Pursuant to that authority, the Supreme Court promulgated Rule 9029,[10] which authorizes district courts to adopt local bankruptcy rules "governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction." *See* Fed. R. Bankr.P. 9029(a). *See also River-*

*meadows Assocs., Ltd. v. Falcey (In re Rivermeadows Assocs., Ltd.)*, 205 B.R. 264, 269 (10th Cir. BAP 1997). "Although the district court and bankruptcy court have been delegated authority to adopt local rules, that authority is carefully circumscribed: a district court may make rules prescribing the conduct of business but the rules must be consistent with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure." *Id.; see also Bersher Invs. v. Imperial Sav. Ass'n. (In re Bersher Invs.)*, 95 B.R. 126, 129 (9th Cir. BAP 1988) ("Bankruptcy Rule 9029 allows for the making of local bankruptcy rules so long as they are not 'inconsistent' with the more general Bankruptcy Rules."). A local rule may dictate practice or procedure "but may not enlarge, abridge or modify any substantive right." *Rivermeadows*, 205 B.R. at 269.

■■■ As noted in *Garner v. Shier (In re Garner)*, 246 B.R. 617, 624 (9th Cir. BAP 2000), a three-part test exists for determining the validity of a local rule: "(1) whether it is consistent with Acts of Congress and the Federal Rules of Bankruptcy Procedure; (2) whether it is more than

**8.** Subsection (a) of 28 U.S.C. § 2071 provides: The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title.

**9.** 28 U.S.C. § 2075 provides in part: The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right.

**10.** Rule 9029 provides, in pertinent part:
  (a) Local Bankruptcy Rules
  (1) Each district court acting by a majority of its district judges may make and amend rules governing practice and procedure in

all cases and proceedings within the district court's bankruptcy jurisdiction which are consistent with—but not duplicative of—Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms. Rule 83 F.R.Civ.P. governs the procedure for making local rules. A district court may authorize the bankruptcy judges of the district, subject to any limitation or condition it may prescribe and the requirements of 83 F.R.Civ.P., to make and amend rules of practice and procedure which are consistent with—but not duplicative of—Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms. Local rules shall conform to any uniform numbering system prescribed by the Judicial Conference of the United States.

merely duplicative of such statutes and rules; and (3) whether it prohibits or limits the use of Official Forms." *Id.*, citing Fed. R. Bank. P. 9029(a)(1).

### B. *The Six Month Rule Conflicts with Section 1322*

■ Debtors persuasively contend that the Six Month Rule is inconsistent with section 1322 of the Bankruptcy Code and abridges their substantive right to cure defaults under section 1322.

Section 1322 allows a Chapter 13 debtor to include a provision in his or her plan proposing to cure or waive "any" defaults. In particular, section 1322(b)(3) states that a Chapter 13 plan may "provide for the curing or waiving of any default." In addition, section 1322(b)(5) provides that, notwithstanding section 1322(b)(2),[11] a debtor may propose to cure any default within a reasonable time and to maintain payments during the pendency of the Chapter 13 case on any claim in which the last payment is due after the due date of the final payment under the plan. *See McDonald v. Sperna (In re Sperna)*, 173 B.R. 654, 659 (9th Cir. BAP 1994) ("Section 1322(b)(5) provides for the cure of any

default on a loan and the maintaining of payments if the last payment is due after the date on which the final payment under the plan is due."). In 1994, Congress amended section 1322 to add section 1322(c), which allows the debtor to cure a default until completion of a foreclosure sale under state law. Specifically, Congress provided that "[n]otwithstanding subsection (b)(2) . . . a default with respect to . . . a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) . . ." 11 U.S.C. § 1322(c).[12]

■ Despite the broad flexibility given to Chapter 13 debtors to cure defaults through their plans under section 1322 (as long as the other requirements of section 1322 and 1325 have been satisfied), the Six Month Rule limits the ability of certain Chapter 13 debtors to cure pre-petition defaults through their plans within a reasonable time. The rule impermissibly forces all debtors who had cases pending in the six months prior to the petition date to cure specified pre-petition defaults within 15 days of their Chapter 13 petition dates, rather than within the "reasonable time" provided by statute.[13] They thus

---

**11.** Section 1322(b)(2) permits a Chapter 13 debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."

**12.** This new provision, by permitting cure under section 1322(b)(3) notwithstanding section 1322(b)(2), implicitly overrules cases such as *Seidel v. Larson (In re Seidel)*, 752 F.2d 1382 (9th Cir.1985), which held that a debtor could not cure a fully matured mortgage because such a cure would be a modification prohibited by section 1322(b)(2).

**13.** Neither the Bankruptcy Code nor its legislative history defines a "reasonable time" for curing defaults under section 1322(b)(5). Judge Lundin's treatise on Chapter 13 analyzes how courts have interpreted "reasonable time" to cure:

> Chapter 13 debtors who invoke § 1322(b)(5) to cure defaults with respect to a long-term home mortgage must do so "within a reasonable time." Few provisions of the Bankruptcy Code have generated so much case law completely lacking in uniformity. In almost every jurisdiction— by local rule, case law or cultural imperative—there is a rule of thumb that home mortgage arrearages must be cured within "X" months of confirmation. "X" varies from jurisdiction to jurisdiction, and in some jurisdictions, "X" varies from case to care. If there is any trend in the reported decisions, it is the increasing use of factors to determine reasonableness. But it cannot be said that the application of factors has produced any greater consistency or predictability in the cases.

lose the ability to extend payment of those arrearages through the plan. Consequently, the Six Month Rule abridges the substantive rights regarding cure provided to all debtors under section 1322(b).

■ Debtors' rights are abridged notwithstanding the Six Month Rule's provision that allows a court to excuse parties from compliance. This exception imposes additional burdens on select debtors and requires them to seek court authority to take advantage of a right accorded to them by the Bankruptcy Code (i.e., to cure defaults through a plan).[14] The rule infringes upon rights provided by the Code, even if the infringement is modest in light of the exception. Under *Garner* and Rule 9029, therefore, the Six Month Rule is invalid, and the bankruptcy court erred in dismissing Debtors' case for failure to comply with it.

While L.B.R. 3015–1(m)(2) reflects an understandable attempt to redress abuses caused by repetitive filings, such abuses should be addressed by case-by-case dismissals for cause under section 1307(c) (*e.g.*, for bad faith, for not satisfying the eligibility requirements of section 109(g), etc.) or by case-by-case denial of confirmation under section 1325(a)(3) (*i.e.*, for failing to propose plan in good faith).[15] By imposing a general pre-petition cure requirement which exceeds that contemplated by the Code, the Six Month Rule is inconsistent with an Act of Congress and is thus invalid under Rule 9029(a).

## VII.  CONCLUSION

Because the Six Month Rule of L.B.R. 3015–1(m)(2) conflicts with the Bankruptcy Code, it is invalid and the bankruptcy court erred in dismissing Debtors' Chapter 13 case for failure to comply with it.

---

Elsewhere, in § 365(b)(1), the Bankruptcy Code requires a trustee to "promptly cure" defaults with respect to a lease or executory contract as a condition of assumption. *Ordinary usage of the words "reasonable" and "promptly" suggests that reasonable should be a less rigorous test for the debtor.* Keith M. Lundin, Chapter 13 Bankruptcy, § 133.1 (3d ed.2000) (emphasis added)(footnotes omitted).

Despite the numerous decisions in other jurisdictions defining "reasonable time" for the purposes of section 1322(b)(5), little published case law on this issue exists in the Ninth Circuit. Nevertheless, this panel stated in *United Cal. Sav. Bank v. Martin (In re Martin)*, 156 B.R. 47, 50 (9th Cir. BAP 1993) that "the reasonable time to cure defaults under § 1322(b)(5) is a flexible concept, determined on a case-by-case basis, and is within the sound discretion of the trial court." *Id.*, citing *Central Fed. Sav. & Loan Assn. v. King (In re King)*, 23 B.R. 779, 781 (9th Cir. BAP 1982). The *Martin* panel further noted that the "time for cure is, however, limited by § 1322(c) ... to three years, unless the court

approves a longer period not to exceed five years." *Martin*, 156 B.R. at 50.

**14.** Here, no evidence exists that Debtors violated or ignored any orders in their Chapter 7 case. Debtors did not request or obtain dismissal of their Chapter 7 case; it was still pending as of the Chapter 13 petition date. Therefore, Debtors were eligible to file under § 109(g). Debtors filed their Chapter 13 case upon receiving their discharge in their Chapter 7 case; in other words, they filed a "Chapter 20." Since Chapter 20 cases are not per se impermissible or per se bad faith, (*see Gayton v. Haney (In re Gayton)*, 61 B.R. 612, 613 (9th Cir. BAP 1986) and *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991)), the Six Month Rule should not have been per se imposed upon Debtors.

**15.** L.B.R. 3015–1(m)(2) does not mandate dismissal for failure to make postpetition payments as required by the Six Month Rule; nonetheless, such a failure "will generally result in dismissal of the case." L.B.R. 3015–1(m)(1).

Therefore, we REVERSE.[16]

16. Since we are reversing the Dismissal Order, we do not address Debtors' appeal of the denial of the Motion For Reconsideration or the Motion For Stay.